**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| KENNETH DOSS, <br><br> Plaintiff, <br><br> vs. <br><br> JAMES MCKINNEY, et al., <br><br> Defendants. | No. C14-3084-MWB <br><br> **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Kenneth L. Doss, an inmate in Iowa's state prison system, commenced this lawsuit pursuant to 42 U.S.C. § 1983 on December 19, 2014, by filing a *pro se* complaint (Doc. No. 1). He then filed an amended complaint (Doc. No. 12) on March 16, 2015. The named defendants are James McKinney, Jana Hacker, Karen Anderson, Dawn Fulton, Don Harris, Leslie Wagers and Mike Stanton. All are alleged to have been associated with the Iowa Department of Corrections (DOC) during the relevant time period.

Doss alleges the defendants were deliberately indifferent to serious medical needs regarding his hand, back and shoulder while he was incarcerated at the Fort Dodge Correctional Facility (FDCF) in Fort Dodge, Iowa. He also contends that he was retaliated against for filing this action. He seeks compensatory and punitive damages as well as attorney fees and any other relief the court deems just and equitable under the circumstances.

Defendants have now moved for summary judgment (Doc. No. 21). Doss has filed a resistance (Doc. No. 28). The Honorable Mark W. Bennett has referred the

motion to me for the preparation of a report and recommended disposition. (Doc. No. 29). No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted.

## II. UNDISPUTED FACTS

Based on the parties' respective filings, I find that the facts set forth below are undisputed for purposes of defendants' motion for summary judgment.

***The Parties.*** Doss was incarcerated at FDCF from December 27, 2013, through February 20, 2015, when he was transferred to the Anamosa State Penitentiary. During the relevant period of time, the defendants held the following positions at FDCF: (1) James McKinney was the warden, (2) Jana Hacker was a nurse practitioner, (3) Karen Anderson was a nursing supervisor, (4) Dawn Fulton was a grievance officer, (5) Don Harris was a security director, (6) Leslie Wagers was a treatment service director and (7) Mike Stanton was a treatment service director.

***Doss' Treatment History.*** Prior to arriving at FDCF, Doss was held at the Clarinda Correctional Facility (CCF). While at CCF on August 26, 2013, Doss punched a steel door and injured his right hand. He was seen by Dr. Baldwin and was treated with an ace wrap, ice and Ibuprofen. An x-ray taken on September 4, 2013, showed no signs of a fracture or dislocation, but did reveal an old injury. On November 13, 2013, Doss was again seen by Dr. Baldwin and indicated he was able to make a fist.

On April 20, 2014, about four months after being transferred to FDCF, Doss reported that he injured his hand when he punched his cell window. He was not seen by a nurse that day. However, on April 24, 2014, Doss was seen by a nurse and given Ibuprofen and a colles splint for his right hand. His hand was rechecked three times before Doss was referred to the nurse practitioner, Hacker. Hacker saw Doss on May 5, 2014. After an x-ray showed no fracture, the splint was removed.

On June 21, 2014, Doss fell in his cell and injured his right hand. He was seen by a nurse either that day (according to defendants) or on June 25, 2014 (according to Doss). Ultimately, he was given ice and Ibuprofen. He was advised to ice the injured hand and follow a prescribed care plan. On February 15, 2015, Doss again reinjured his hand. The defendants contend that the injury resulted from Doss again punching his cell door. Doss denies this and contends that he simply cut his hand and asked for a band-aid.

*Disciplinary History.* Prior to his transfer from CCF to FDCF, Doss spent time in administrative segregation for inappropriate behavior toward a female staff member. On March 5, 2014, after his transfer to FDCF, Doss received an administrative segregation notice based on an allegation that he wrote an inappropriate letter to a female staff member at CCF. He was placed in administrative segregation pending the disciplinary proceedings. On May 8, 2015, an administrative law judge found that Doss had committed the charged violation. His appeal from this finding was denied. Doss suffered sanctions in the form of a loss of earned time, a ninety day disciplinary detention and the loss of mail privileges.

After this disciplinary decision, Doss remained in administrative segregation due to his continued inappropriate communications with female staff and general disruptive behaviors. On June 24, 2014, his status was changed to suicide and self-injury protocol (SSIP) after he punched a wall on the anniversary of his daughter's death. He was returned to administrative segregation on June 30, 2014. On July 3, 2014, and July 28, 2014, respectively, Doss was found guilty of additional disciplinary violations. He remained in administrative segregation pending his appeals.

On September 2, 2014, his appeals were denied. As a result of the sanctions imposed for his various violations, Doss was required to complete 345 days of disciplinary detention, which would end May 8, 2015. However, in late 2014 or early

3

2015, Warden McKinney reached an agreement with Doss under which Doss' disciplinary detention would be suspended and Doss would be placed in a high level unit (Boone) with the expectation that he would stop writing to female staff members and would stay out of trouble. On January 26, 2015, Doss was placed in involuntary protective custody after suffering a black eye consistent with being in a fight (although Doss denies that he was involved in a fight).

On February 4, 2015, Doss was placed in segregation for being disruptive and attempting to obtain personal information about staff. On February 15, 2015, FDCF staff prepared an offender transfer request, recommending that Doss be sent to the Anamosa State Penitentiary (ASP) due to his ongoing behavior. The request noted that since arriving at FDCF, "Doss has received four major reports and is currently awaiting a decision on his fifth." The document also referenced Doss' history of inappropriate behavior toward female staff and noted that the pending report was based on alleged threats to a female staff member. The transfer request was approved by the Iowa Department of Corrections on February 19, 2015.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are

"critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. ANALYSIS

Defendants contend that both of Doss' claims fail as a matter of law. I will address each separately.

### A. Were Defendants Deliberately Indifferent to a Serious Medical Need?

#### 1. Applicable Standards

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban on cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To prevail on such a claim, an inmate must show "that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

Under the first requirement, an objectively serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby*, 953 F.2d 349,

351 (8th Cir. 1991)). Under the second requirement, an official is deliberately indifferent "if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). "Although the level of blameworthiness must rise above negligence, a plaintiff does not have to show that the prison officials acted 'for the very purpose of causing harm or with knowledge that harm w[ould] result.'" *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (quoting *Farmer*, 511 U.S. at 835). Similarly, a claimant's "mere disagreement with treatment decisions does not rise to the level of constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). The claim that an officer deliberately disregarding a risk is evaluated "in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action that would have been apparent to an official in that position." *Letterman*, 789 F.3d at 862 (quoting *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000)).

### 2. *Analysis*

Doss alleges that deliberate indifference to his serious medical need occurred when defendants did not provide the level of care he requested. Doss states that he was not seen by nurses after some of his complaints. Defendants argue that Doss' complaints amount to a disagreement in the course of treatment and that no meaningful delays in treatment occurred.

With regard to the first element of a deliberate indifference claim, there is no dispute that Doss' various injuries while at FDCF gave rise to serious medical needs. As such, only the second element is at issue. That element is subjective and requires that Doss present evidence supporting a finding that the defendants "acted with a sufficiently culpable state of mind, namely, that they actually knew of, but deliberately

7

disregarded [his] medical needs." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (internal citations and quotation marks omitted). The evidence must show "that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Id*. (emphasis in original). To put it another way, deliberate indifference occurs when an official "knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Schaub*, 638 F.3d at 916 (citing *Farmer*, 511 U.S. at 847).

Here, the record does not come close to establishing deliberate indifference. Prior to transferring to FDCF, Doss was treated by Dr. Baldwin at CCF for a self-inflicted hand injury. Doc. No. 21-2 at 2. After his transfer, Doss re-injured his right hand. Although he was not seen immediately following his injury, he was seen a few days later and ultimately had a negative x-ray. Doc. No. 21-2 at 2-3; Doc. No. 28-1 at 1. Even after this negative x-ray, the medical staff continued to see Doss for his hand and Doss continued to receive ice and Ibuprofen. *Id.*

Doss has submitted no evidence indicating that his hand was so obviously and severely injured that even a layperson would have recognized the need for immediate medical assistance. Care was not refused and medical staff examined Doss shortly after his various injuries. In treating those injuries, Doss received Ibuprofen, ice and a splint. As a matter of law, Doss has failed to demonstrate that the treatment provided by defendants was so inadequate to support a finding of deliberate indifference.

Doss' complaints that he did not receive care as quickly as he needed do not necessitate a finding of deliberate indifference. *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009) ("The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish"). Here, the delay between his April 20, 2014, injury and the subsequent x-ray amounted to a total of fifteen days. *Compare Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (finding one month

delay from nurse's tentative diagnosis of a fractured finger and an x-ray without more, was merely negligent and not deliberate indifference). Inmates who "alleg[e] a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotation marks omitted). Here, Doss was seen just days after his initial complaint concerning his hand, had the hand rechecked on four occasions over the course of a week, was referred to the nurse practitioner and ultimately had a negative x-ray. The delay between his initial injury and first seeing a nurse was minor and the delay between the injury and an x-ray did not rise to the level of deliberate indifference. Additionally Doss makes no claim that the delay affected his prognosis or escalated the situation. Rather, Doss' sole complaint seems to be that he was not seen as quickly or as often as he desired.

Doss argues that another injury to his hand occurred and he was denied medical care – specifically that he should have received another x-ray. However, Doss agrees that he was seen after he re-injured his hand on June 21, 2014, and again for a re-check on June 30, 2014. Doc. No. 21-2 at 3; Doc. No. 28-1 at 2. Doss then saw a nurse and was educated to apply ice and elevate his hand. While Doss disputes the decision not to order an x-ray after this injury, that disagreement with the course of treatment does not amount to deliberate indifference. It is not medical indifference or cruel and unusual punishment for a medical practitioner to determine an x-ray is not necessary. *Estell v. Gamble*, 429 U.S. 97, 107 (1976). Moreover, again, Doss has presented no evidence that the failure to order an x-ray after this injury affected his prognosis or enhanced his injury. Rather, Doss' sole complaint seems to be that he was not seen as quickly or as often as he desired.

Finally, Doss alleges that he was denied medical care for ongoing back and shoulder issues. Doss sent a medical request on October 14, 2014, complaining of shoulder and back pain. Doc. No. 28 at 7. The complaint noted that he had been seen by Hacker on October 2, 2014, and prescribed shoulder exercises and Tylenol. *Id.* In denying portions of the defendants' statement of facts, Doss states that some instances in which the defendants contend he was seen for his hand were actually examinations of his back or shoulder. Even accepting Doss' recollection as true, this shows only that he was receiving ongoing medical treatment for both his hand, his back and his shoulder.

Doss does not contend that his ailments were ignored, but argues that he was not seen as quickly, or as many times, as his conditions warranted. However, there is no evidence in the record to support a finding that defendants knew of, and deliberately disregarded, Doss' medical needs. Here, the evidence illustrates that the FDCF medical staff were aware of each injury Doss suffered and Doss received treatment following these injuries. Based on this record, Doss has not demonstrated that any genuine issues of material fact exist as to whether the defendants were deliberately indifferent to a serious medical need. As such, I recommend entry of judgment in favor of the defendants as a matter of law on this claim.

## B.   *Did Defendants Retaliate Against Doss?*

Doss next claims that various decisions about his placement were made in retaliation for the assertion of his rights, including the filing of this lawsuit. As noted above, he commenced this action on December 19, 2014. He was later placed in administrative segregation and ultimately was transferred to ASP. The defendants argue that the segregation and subsequent transfer were the result of disciplinary proceedings and in order to protect the safety of both Doss and others.

### 1. Applicable Standards

"To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show he was 'singled out because of [his] exercise of constitutional rights.'" *Id.* (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)).

In establishing the third prong, the plaintiff must show that transfer would not have occurred but for the exercise of a constitutional right. *See Ponchik v. Bogan*, 929 F.2d 419, 420 (8th Cir. 1991) (prisoner must establish transfer would not have occurred "but for" exercise of constitutional right; rejecting retaliatory-transfer claim even where filing of lawsuits against officials was clearly factor in transfer, because prisoner did not prove transfer would not have been made "but for" litigation). "[A] defendant may successfully defend retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014) (quoting *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008)). An impartial decisionmaker may utilize a correctional officer's report of a rule violation as some evidence, even if the rule violation is disputed by the inmate. *Id.*

### 2. Analysis

The first two elements of Doss' retaliation claim are not at issue. Doss undoubtedly engaged in protected activity by filing this lawsuit and adverse action, in the form of changes in placement and a transfer to another facility, occurred after Doss

engaged in that activity. The only element in dispute is whether the adverse action was motivated at least in part by the protected activity.

Other than mere timing, Doss has offered no evidence that would allow a finding that the defendants acted with a retaliatory motive. It is undisputed that Doss was charged with, and ultimately found guilty of, multiple violations while incarcerated at FDCF. While Doss denies some or all of the charged conduct, he was determined to be guilty by administrative law judges, not by any of the defendants. *See* Doc. No. 21-3 at 49-50, 54, 57-58, 60-62. The offenses included sexual misconduct, obstructive/disruptive conduct, verbal abuse, and disobeying orders and directions. *See, e.g.*, *id*. at 48-50, 53-54. In addition to these fully-adjudicated violations, Doss was placed in segregation again on February 4, 2015, based on allegations that he (1) attempted to get personal information about staff members, (2) became disruptive with FDCF staff and (3) ran from an FDCF officer. *Id*. at 65. FDCF initiated its transfer request after the February 4 incident.

Clearly, the defendants had more than "some evidence" that Doss actually committed rule violations. He had been found guilty of multiple violations in four separate proceedings and a fifth proceeding was about to commence. In contrast to these undisputed facts, Doss points to no evidence suggesting that any of the defendants were motivated by this lawsuit, rather than by his habitual pattern of misconduct.

In short, Doss has not shown that "but for" the filing of the present suit, he would not have been placed in administrative segregation and, ultimately, transferred from FDCF. I recommend entry of judgment in favor of the defendants as a matter of law on this claim.

## V. CONCLUSION AND RECOMMENDATION

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the defendants' motion for summary judgment (Doc. No. 21) be **granted**, that this case be **dismissed with prejudice** and that **judgment be entered** in favor of the defendants and against the plaintiff.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 4th day of November, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE